UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -- -- X
MARINA SIMONOFF,                         :
                                         :
                 Plaintiff,              :
                                         : 10 Civ. 2923 (LMM)
v.                                       : MEMORANDUM AND ORDER
                                         :
KAPLAN, INC.,                            :
                                         :                    :
                 Defendant.              :
                                         :
- - - - - - - - - - - - - - - - - X

McKENNA, D.J.

   This  action  was  brought  by  Marina  Simonoff  against
Kaplan,  Inc.,  alleging  that  Kaplan  willfully  violated
Section  1681c(g)  of  the  Fair  and  Accurate  Credit
Transactions  Act  of  2003  (FACTA),  which  requires  that
merchants truncate the credit card information they include
on  customers'  receipts.   Simonoff,  who  made  an  online,
credit  card  purchase  of  a  book  from  Kaplan,  argues  that
Kaplan  violated  Section  1681c(g)  by  including  the
expiration  date  of  her  credit  card  in  the  purchase
confirmation  e-mail  Kaplan  e-mailed  her  following  her
purchase.   She  argues  that  she  is  therefore  entitled  to
statutory damages under FACTA Section 1681n.

   Section  1681n,  however,  only  provides  for  liability
where  the  merchant's  noncompliance  is  willful,  and  the

Supreme Court has held that a merchant is not in willful noncompliance when the merchant's interpretation of the statute is objectively reasonable.  This Court finds that Kaplan's proposed interpretation of Section 1681c(g)-- interpreting the Section as applying only to receipts that merchants print out on paper--is objectively reasonable and therefore grants Kaplan's motion to dismiss.

## I.    BACKGROUND

On June 22, 2009, Plaintiff Simonoff received from Defendant Kaplan an e-mail confirmation for a book she had purchased from the company online via credit card.  The e-mail confirmation displayed the expiration date of her credit card.[1]  (Compl. ¶ 18.)

## II. DISCUSSION

### A. Standard of Review

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "In deciding a motion to dismiss, the Court ordinarily accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor."  In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 572 (S.D.N.Y. 2007) (citing Levy v.

---

[1] Kaplan contends that the e-mail sent to Simonoff was an "e-mail confirmation," not a "receipt."  (Def.'s Mem. at 2.)  For purposes of this Memorandum and Order, this Court will not distinguish between these two terms and will use them interchangeably.

Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir.
2001)). However, "the plaintiff must provide the grounds
upon which his claim rests through factual allegations
sufficient 'to raise a right to relief above the
speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund,
Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### B. The Relevant FACTA Sections: 1681c(g) and 1681n

FACTA was passed in 2003 as an amendment to the Fair
Credit Reporting Act (FCRA). Fair and Accurate Credit
Transactions Act of 2003, Pub. L. No. 108-159, § 1, 117
Stat. 1952, 1952 (2003). FACTA Section 1681c(g) imposes
restrictions on the disclosure of credit and debit card
information by those who accept the cards for business
transactions. It provides:

> (1) In general
>
> Except as otherwise provided in this
> subsection, no person that accepts
> credit cards or debit cards for the
> transaction of business shall print
> more than the last 5 digits of the card
> number or the expiration date upon any
> receipt provided to the cardholder at
> the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1) (2009).

The remaining subsections of 1681c(g), which are
relevant in interpreting which types of receipts Section

1681c(g) covers, provide:

>  (2) Limitation
>
>  This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.
>
>  (3) Effective date
>
>  This subsection shall become effective-
>
>  (A) 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and
>
>  (B) 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

§ 1681c(g)(2-3).

FACTA Section 1681n outlines civil liability for willful noncompliance with FACTA sections, including Section 1681c.  It provides in relevant part:

>  Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000, whichever is greater;

. . . .

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

. . . .

15 U.S.C. § 1681n (2009). Simonoff does not claim actual damages and seeks only the statutory damages of $100 to $1,000 per violation. (Compl. ¶ 38.)

**C. Kaplan's Proposed Interpretation of Section 1681c(g) and Kaplan's Argument of Objective Reasonableness**

Kaplan argues that Section 1681c(g) does not apply to the e-mail confirmations it sends to customers because, according to Kaplan, such e-mails are not "printed," nor are such e-mails provided to the customer "at the point of the sale or transaction." (Def.'s Mem. in Supp. of Renewed Mot. to Dismiss (hereinafter "Def.'s Mem.") at 2 (quoting § 1681c(g)).) Further, Kaplan argues that any purported violations of Section 1681c(g) were not willful and thus

the company is not liable under Section 1681n.  (Def.'s Mem. at 3.)

**D.  Kaplan's Interpretation of Section 1681c(g) is Objectively Reasonable**

This Court finds that Kaplan's reading of Section 1681c(g) is objectively reasonable, and thus Kaplan cannot be held liable under Section 1681n for willful violation of FACTA.  See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 at 68-71.  This finding makes it unnecessary to resolve the merits of Kaplan's interpretation of Section 1681c(g).

**1. Safeco's Holdings**

In Safeco Insurance Company of America v. Burr, consumers sued insurers for violation of FCRA Section 1681m(a), which requires that notice be provided to any consumer subjected to "adverse action . . . based in whole or in part on any information contained in a consumer [credit] report."  Safeco, 551 U.S. at 52.  Anyone who "willfully fails" to provide such notice is civilly liable under Section 1681n.  Id.

The Safeco Court held that Section 1681n's imposition of liability for willful noncompliance with FCRA covers not only knowing but also reckless noncompliance.  Id.  The Safeco Court further held that a company is not in willful noncompliance with FCRA when the company's interpretation

6

of the statute is "not objectively unreasonable."  Id. at
68-71.  The Safeco Court explained that "a company subject
to FCRA does not act in reckless disregard of it unless the
action is not only a violation under a reasonable reading
of the statute's terms, but shows that the company ran a
risk of violating the law substantially greater than the
risk associated with a reading that was merely careless."
Id. at 69.

The Safeco Court noted that Defendant Safeco did not
have the benefit of guidance from the courts of appeals nor
from the Federal Trade Commission (FTC) that might have
discouraged it from adopting the view it took.  Id. at 70.
"Given this dearth of guidance and the less-than-pellucid
statutory text," the Safeco Court concluded, "Safeco's
reading [albeit incorrect] was not objectively
unreasonable, and so falls well short of raising the
'unjustifiably high risk' of violating the statute
necessary for reckless liability."  Id.

In addition, the Safeco Court expressly held that
evidence of a company's subjective bad faith cannot support
a willfulness finding when the company's reading of the
statute is objectively reasonable: "Where, as here, the
statutory text and relevant court and agency guidance allow
for more than one reasonable interpretation, it would defy

history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." Id. at 70 n. 20.

Courts have specifically held that defendants' Safeco-based arguments regarding the reasonableness of their statutory interpretation are grounds upon which to grant a motion to dismiss. See, e.g., King, 555 F. Supp. 2d at 1342-43 ("[P]laintiff has again failed to sufficiently allege that Defendant willfully violated § 1681c(g), and I grant Defendant's Motion to Dismiss on this additional ground for dismissal."). Thus, a finding that Kaplan's reading of the statute is objectively reasonable would be sufficient grounds upon which to grant Kaplan's motion to dismiss.

### 2. Principles of Statutory Interpretation

As noted above, this Court need not conclusively interpret Section 1681c(g) in order to determine whether Kaplan is liable under Section 1681n (and whether Kaplan's motion to dismiss should be granted); this Court need only determine whether Kaplan *willfully* violated Section 1681c(g)--i.e., whether Kaplan's reading of Section 1681c(g) is objectively reasonable. See Safeco at 68-71. To determine this, however, this Court must consider the principles of statutory interpretation.

"[S]tatutory analysis necessarily begins with the plain meaning of the law's text and, absent ambiguity, will generally end there." Dobrova v. Holder, 607 F. 3d 297, 301 (2d Cir. 2010) (internal quotations omitted) (alteration in original). In reviewing a statute, "we 'review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme.'" Id. (citing United States v. Aguilar, 585 F.3d 652, 657 (2d Cir. 2009)). See also Zhang v. Holder, 2010 WL 3169292, at *9 (2d Cir. 2010); Shlahtichman, 2010 WL 3122786, at *3 (citing Samantar v. Yousuf, 130 S. Ct. 2278, 2289 (2010)) ("[W]e must also look to the statute as a whole in discerning a term's meaning rather than examining it in isolation.").

### 3. Reasons Kaplan's Interpretation of Section 1681c(g) is Objectively Reasonable

Kaplan's interpretation of Section 1681c(g) is objectively reasonable for a number of reasons.

Recall that the FACTA Section 1681c(g)(1) provides:

> . . . [N]o person that accepts credit cards or debit cards for the transaction of business shall print more that the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

§ 1681c(g)(1).  Second, it limits truncation requirements "only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit or debit card account number is by handwriting or by an imprint or copy of the card."  § 1681c(g)(2).  Finally, the statute sets forth two separate effective dates, with the applicable effective date depending on the date by which the particular "cash register or other machine or device that electronically prints receipts" was first put into use.  § 1681c(g)(3).

### a. Section 1681c(g)'s Plain Language

Kaplan's interpretation of Section 1681c(g) is consistent with the plain meaning of the statute's text. The statute does not define the word "print" or "printed," and Kaplan supports with dictionary definitions its argument that the plain meaning of print is to transfer to paper.  (Def.'s Mem. at 5-6.)  Kaplan cites the Cambridge Advanced Learner's Dictionary, which provides as a definition of "print": "to produce writing or images on paper or other material with a machine."  Cambridge Advanced Learner's Dictionary, http://dictionary.cambridge.org/dictionary/british/print_5 (last visited September 17, 2010).  Kaplan also cites the Oxford English Dictionary, which includes among its

definitions of the verb "print": "to cause to leave a mark"; "to set or trace (a mark, figure, etc.) on any surface, by carving, writing, etc."; "[t]o commit (something) to writing; to express in written words; to write down"; "[t]o make or produce (text, a book, a picture, etc.) by a mechanical process involving the transfer of characters or designs on to paper, vellum, etc., esp. from inked blocks, types, or plates"; and "[t]o mark (paper, etc.) with printed characters or designs." Oxford English Dictionary, http://dictionary.oed.com/cgi/entry/50188781?query_type=word&queryword=print (last visited Sept. 17, 2010).

Simonoff, on the other hand, argues that "print" is commonly defined as "to display on a surface (as a computer screen) for viewing." (Pls.'s Resp. in Opp'n to Def's Renewed Mot. to Dismiss at 3 (citing Merriam-Webster's Collegiate Dictionary 924 (10th ed. 2002).) However, Simonoff's argument is unpersuasive because, as other courts have pointed out, the definition Simonoff cites is an alternate sub-definition of "print," associated with the term "print out." Merriam-Webster's Collegiate Dictionary 987 (11th ed. 2003)[2]; Shlahtichman v. 1-800 CONTACTS, 2009

---

[2] Merriam-Webster Dictionary defines the verb "print" as:

WL 4506535, at *3 (N.D. Ill. Dec. 2, 2009) (finding that "print is not commonly understood as a display on a computer screen."); Grabein v. Jupiterimages Corp., No. 07-22288-Civ., 2008 WL 2704451, at *8 (S.D. Fla. Jul. 7, 2008) (report and recommendation of magistrate judge), *adopted*, 2008 WL 2906866 (S.D. Fla. Jul. 28, 2008) (concluding that "the word 'print' does not encompass on-screen computer displays because 'print' only refers to a tangible, paper receipt."); Narson v. Godaddy.com, Inc., 2008 WL 2790211, at *5 (D. Ariz. May 5, 2008) ("[T]he common and ordinary meaning of 'to print,' both generally and in the context of computers, is to produce text by applying ink to a tangible medium, such as paper.  The definitions highlighted by Plaintiff fail to show that the common meaning of 'to print' includes the display of a webpage on a computer screen."). See also Shlahtichman, 2010 WL 3122786, at *4 (7th Cir. Aug. 10, 2010) (concluding that, while some

---

> 1 a: to impress something in or on
> b: to stamp (as a mark) in or on something
> 2 a: to make a copy of by impressing paper against an inked printing surface.
> b(1): to impress (as wallpaper) with a design or pattern. (2): to impress (a pattern or design) on something.
> c: to publish in print.
> d: *PRINT OUT;* also*: to display on a surface (as a computer screen) for viewing.*
> . . . .

Merriam-Webster's Collegiate Dictionary 987 (11th ed. 2003) (emphasis added).

dictionaries recognize "print," when used with reference to computers, to mean the display of text on a computer's viewing screen, these definitions "do not yet represent the ordinary or natural meaning of 'print.'").

### b. Section 1681c(g)'s Language in Context

Further, Kaplan's interpretation is objectively reasonable in light of the context in which the debated term is used. Kaplan, supported by the findings of several courts, argues that the context of the term "print" in Section 1681c(g) suggests that the statute is aimed at paper receipts. (Def.'s Mem. at 7-9); Shlahtichman, 2010 WL 3122786, at *5-7; Shlahtichman, 2009 WL 4506353, at *4; Turner v. Ticket Animal, 2009 WL 1035241, at *3 (S.D. Fla. Apr. 16, 2009); Jupiterimages, 2008 WL 2704451, at *5-7; King v. Movietickets.com, Inc., 555 F. Supp. 2d 1339, 1340 (S.D. Fla. 2008); Haslam v. Federated Dep't Stores, Inc., No. 07-61871 Civ., 2008 WL 5574762, at *4 (S.D. Fla. May 16, 2008).

First, subsection 1681c(g)(1) provides that no more than the last five digits of the credit or debit card number or expiration date shall be printed upon "any receipt provided to the cardholder *at the point of the sale or transaction*." § 1681c(g)(1) (emphasis added). Kaplan argues that this subsection "presumes a face-to-face

13

transaction at the conclusion of which a physical receipt
is provided from merchant to customer." (Def.'s Mem. at 7,
13.)  Several courts agree.  See, e.g., Shlahtichman, 2010
WL 3122786, at *5 (citing) ("This language [of Section
1681c(g)(1)] has a ready application to face-to-face
transactions that take place in a 'bricks-and-mortar' store
or some comparable physical location at which the consumer
is handed a receipt."); Jupiterimages, at *7 ("There is no
tangible 'point of sale or transaction' with respect to e-
commerce; but the 'point of sale or transaction' clause
makes sense in the context of printed paper receipts.");
Narson, 2008 WL 2790211, at *5 ("This language clearly
contemplates a transaction where the customer is present in
the location where the sale is made, and where the merchant
provides the receipt to the customer at that location.").
In contrast, as the Seventh Circuit noted in Shlahtichman,
application of this language to internet purchases raises a
host of questions, including where the point of sale for
such a purchase is, and whether the point of sale is the
same point at which an e-mail receipt is provided to the
consumer.  Shlahtichman, 2010 WL 3122786, at *5.

Second, subsection 1681c(g)(3) sets out dates by which
merchants must become compliant with Section 1681c(g),
these dates depending on when the merchant began using the

14

"cash register or other machine or device that electronically prints receipts." § 1681c(g)(3). Kaplan argues that this language likewise indicates that the statute was intended to apply only to paper receipts. (Def.'s Mem. at 8-9.) Several courts agree that the statute's reference to a "cash register or other machine or device" supports the notion that the statute covers only cash registers and other similar machines that print paper receipts, like dial-up terminals. Smith v. Under Armour, Inc., 593 F. Supp. 2d 1281, 1287-88 (S.D. Fla. 2008); Haslam, 2008 WL 5574762, at *4; Narson, 2008 WL 2790211, at *5-6. The district court deciding Shlahtichman reasoned:

> Under the statutory interpretation rule of *ejusdem generis*, when a statute sets out a specific term and a general term, the general term is confined to covering subjects comparable to the specifics it follows. . . . [T]he term "other machine or device" as used in FACTA must be understood as a reference to devices akin to cash registers. Accordingly, FACTA would apply to point-of-sale terminals or dial-up terminals. E-mail servers or home computers, however, are not sufficiently "akin to" cash registers to receive protection under FACTA.

Shlahtichman, 2009 WL 4506535, at *4 (internal citations omitted). Thus, Kaplan argues, if "other machine or device" were interpreted to encompass machines other than the type used to print paper receipts--like Simonoff's

personal computer--the exemplary term "cash register" would be superfluous, violating settled principles of statutory interpretation.  (Def.'s Mem. at 8-9 (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001)).)

Moreover, Kaplan argues, adopting Plaintiff's argument that the statutory term "print" encompasses "to display on a computer screen" would be nonsensical in light of subsection 1681c(g)(3)'s method for establishing effective dates.  (Def.'s Mem. at 9.)  As explained, the effective date, and thus the merchant's potential liability, depends on the date the "cash register or other machine or device" used to print the receipt is put into use.  § 1681c(g)(3).  If the statute applies not only to paper receipts printed by the merchant but also to those e-mailed to the consumer and displayed on the consumer's computer or other electronic device, then the applicable effective date, and thus the merchant's liability, would hinge on when the consumer's electronic device went into use, a fact entirely beyond the knowledge and control of the merchant.[3]  Shlahtichman, 2010 WL 3122786, at *5.

---

[3] At the present time, both effective dates set forth in subsection 1681c(g)(3) have passed, and Section 1681c(g) now applies to all "cash register[s] or other machine[s] or device[s]" (as that language is used in the statute).  See § 1681c(g)(3).  However, discussion of the effective dates set forth in the statute is still relevant to interpretation of the statute because it is unlikely that Congress would have premised a merchant's liability on dates of which the

Third, Kaplan argues that subsection 1681c(g)(2) also supports its interpretation of print. (Def.'s Mem. at 7-8.) Subsection 1681c(g)(2) states that the statute applies to "electronically printed" receipts but not to receipts on which the card number is recorded "by handwriting or by an imprint or copy of the card." § 1681c(g)(2). Kaplan argues that this language distinguishes between two types of paper receipts--one that is electronically printed and one that is recorded via handwriting, imprinting, or copying--and thus supports the contention that the statute is intended to reach only paper receipts. (Def.'s Mem. at 7-8.) Several courts agree with this conclusion. See, e.g., Shlahtichman, 2009 WL 4506535, at *4 (explaining that the exclusion set out in § 1681c(g)(2) "simply clarifies that FACTA covers only 'electronically printed' paper receipts."); Turner, 2009 WL 1035241, at *3 ("Moreover, the limitations listed in § 1681c(g)(2) refer to two types of receipts which can only be based on paper or another tangible surface, i.e. receipts not electronically printed, but produced by 'handwriting or by an imprint or copy of the card.'"); Narson, 2008 WL 2790211, at *5 (explaining that § 1681c(g)(2)'s exclusion "contemplates a tangible paper receipt, in which the credit card information is

_____

merchant is not aware. Shlahtichman, 2010 WL 3122786, at *5.

physically transferred by hand, carbon copy, or photocopy onto a tangible medium.").

Kaplan further argues that, if Congress had intended to regulate not only printed paper receipts, but also receipts that are electronically "transmitted," "sent, or "displayed," Congress could easily have included those words in the statute.   (Def.'s Mem. at 8.)   Courts have found significant the absence of any language related to e-commerce in Section 1681c(g), given that e-commerce was common by 2003 when FACTA was enacted, and given that Congress has explicitly included electronic media and transactions within the scope of other statutes. Shlahtichman, 2010 WL 3122786, at *6 (citing U.S. Dep't of Commerce, E-Stats: E-Commerce 2003 Highlights, at 4 (May 1,,       2005),      *available      at* http://www.census.gov/econ/estats/2003/2003finaltext.pdf (last visited Aug. 5, 2010) and collecting statutes that explicitly include electronic media and transactions within their scope); Under Armour, 593 F. Supp. 2d at 1287 (citing, as an example, a statute intended to regulate the transmission of electronic information on the internet). Congress would have used terminology related to e-commerce, courts reason, had it intended the statute to reach electronic receipts viewed or printed by consumers.

<u>Shlahtichman</u>, 2010 WL 3122786, at *6.   <u>See also</u> <u>Shlahtichman</u>, 2010 WL 3122786, at *7 ("[T]o apply the statute to receipts that are e-mailed to the consumer would broaden the statute's reach beyond the words that Congress actually used."); <u>Under Armour</u>, 593 F. Supp. 2d at 1287 (explaining that "[W]here Congress knows how to say something but chooses not to, its silence is controlling," and "Congress could have chosen language making clear electronic receipts were within the scope of Section 1681c(g)." (internal quotations and citations omitted)); <u>Smith v. Zazzle.com, Inc.,</u> 589 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) ("If Congress had intended to extend the prohibitions of FACTA to email transmissions, the plain language of this statute would reflect such an intention."); <u>Jupiterimages</u>, 2008 WL 2704451, at *7 ("Had Congress sought to include the scenario where online receipts were to be covered by section 1681c, Congress could have included language to that effect.  Congress chose not to do so, and that silence is controlling."); <u>Haslam</u>, 2008 WL 5574762, at *4 (same).

### c. Section 1681c(g)'s Legislative History

There is also legislative history supporting Kaplan's interpretation of Section 1681c(g).  Kaplan points to a statement Senator Charles Schumer made at a May 2003

Congressional hearing regarding FCRA, in which Senator Schumer advocated for truncation so that "the receipt, the part you discard, does not show the whole number on there so people cannot go into the garbage can, pick it up, and duplicate your credit card number." The Fair Credit Reporting Act and Issues Presented by Reauthorization of the Expiring Preemption Provisions: Hearing Before the Committee on Banking, Housing and Urban Affairs, United States Senate, 108th Cong., 78 (2003). At a subsequent Congressional proceeding held leading up to FACTA's enactment, Senator Dianne Feinstein explained that she was in support of the proposed amendment to FCRA that would "create[] a national standard for truncating credit card numbers on *store* receipts." 149 Cong. Rec. S13861 (daily ed. Nov. 4, 2003) (statement of Sen. Feinstein) (emphasis added). See also S. Rep. No. 108-166, at 13 (2003) (Conf. Rep.) (explaining that the FACTA section addressing truncation of credit card and debit card information "provides for a 3 year effective date for any cash registers in use on or before January 1, 2005 . . ."-- notably referring only to cash registers, and thus suggesting that the statute is not intended to cover receipts e-mailed to customers).

In addition, when signing FACTA into law, President George W. Bush noted that: "this law will help prevent identity theft before it occurs, by requiring merchants to delete all but the last five digits of a credit card number on store receipts. . . . Slips of paper that most people throw away should not hold the key to their savings and financial interests." Remarks by the President at Signing of the Fair and Accurate Credit Transactions Act, 2 Pub. Papers 1676 (Dec. 4, 2003).

During a later Congressional proceeding regarding FACTA in May 2008, Representative Melissa Bean stated that FACTA "eliminates one avenue for these criminals to steal account numbers by prohibiting the printing of full account numbers on *paper* receipts." 154 Cong. Rec. H00000-29 (daily ed. May 13, 2008) (statement of Rep. Bean) (emphasis added). Representative Bean noted that "most businesses have updated their *cash registers* to ensure they are in full compliance . . . ." Id. (emphasis added). At the same Congressional proceeding, Representative Tim Mahoney explained that "when consumers *go into a convenience store, restaurant or retailer*, they will notice that their credit card receipt does not contain the full credit card number." Id. (statement of Rep. Mahoney) (emphasis added).

### d. A Majority of Courts Have Found Kaplan's Interpretation of Section 1681c(g) to Be Correct

Lastly, the majority of federal district courts, as well as the Seventh Circuit Court of Appeals, have concluded that the term "electronically printed" covers only paper receipts. Shlahtichman, 2010 WL 3122786, at *3 (citing Turner, 2009 WL 1035241; Under Armour, 593 F. Supp. 2d 1281; Zazzle.com, 589 F. Supp. 2d at 1348; Jupiterimages, 2008 WL 2906866; King, 555 F. Supp. 2d at 1340; Haslam, 2008 WL 5574762; Narson, 2008 WL 2790211). See also Kelleher v. Eaglerider, Inc., 2010 WL 4386837, at *3 (N.D. Ill. Oct. 28, 2010) (applying Shlahtichman, 2010 WL 3122786); Holzman v. Shoes.com, Inc., No. 1:10-cv-01145 (N.D. Ill. filed Feb. 19, 2010).

Only a minority of district courts have concluded that "electronically printed" should be interpreted as covering electronic receipts that are displayed on consumers' computer screens. Shlahtichman, 2010 WL 3122786, at *3 (citing Romano v. Active Network, Inc., No. 09 C 1905, 2009 WL 2916838 (N.D. Ill. Sept. 3, 2009); Harris v. Best Buy Co., 254 F.R.D. 82, 86-87 (N.D. Ill. 2008); Grabein v. 1-800-Flowers.com, Inc., No. 07-22235-Civ., 2008 WL 343179 (S.D. Fla. Jan. 29, 2008); Vasquez-Torres v. Stubhub, Inc., No. CV 07-1328, 2007 U.S. Dist. LEXIS 63719 (C.D. Cal. Jul.

2, 2007).[4]  Further, this Court's research reveals that no court of appeals has interpreted "electronically printed" as covering e-mail confirmations or receipts.

As the district court deciding Shlahtichman noted, it is proper to adjudicate a case at the 12(b)(6) stage when, like in the instant case, the character and content of the e-mail confirmation at issue is clearly established. Shlahtichman, 2009 WL 4506535, at *2 n. 1.  Several courts have granted a defendant's motion to dismiss in cases with facts the same or similar to those in the instant case, on grounds that e-mail confirmations or receipts are not covered under Section 1681c(g).[5]  See, e.g., Holzman, No. 1:10-cv-01145; Shlahtichman, 2009 WL 4506535, at *6; Turner, 2009 WL 1035241, at *3; Under Armour, 593 F. Supp. 2d at 1288; Zazzle.com, 589 F. Supp. 2d at 1348-49; King, 555 F. Supp. 2d at 1342; Narson, 2008 WL 2790211, at *6.

---

[4] In Ehrheart v. Bose Corporation, the district court stated that it was not persuaded that Congress intended to exclude e-mailed receipts from coverage under FACTA. Ehrheart v. Bose Corp., 2008 WL 64491, *6 (W.D. Pa. Jan. 4, 2008).  Ehrheart, however, is factually distinguishable from the instant case, and the statement the Ehrheart court made regarding e-mailed receipts was dictum.  Id. at *2,6.

[5] Kaplan notes that the district judge hearing Shlahtichman rejected a FACTA claim that was virtually identical to Simonoff's claim, based on a complaint substantively identical to Simonoff's complaint, and filed by the same plaintiff's counsel.  (Def.'s Mem. at 2.)  In fact, Kaplan points out, the complaints in Shlahtichman and in the instant case were filed within one month of each other, both in Illinois state court in Lake County.  (Id. at 11.)  In addition, the district judge deciding Holzman (N.D. Ill. Apr. 6, 2010) adopted the analysis of the district judge who had decided Shlahtichman and rejected a similar complaint filed by the same plaintiff's counsel. (Id. at 2-3); Holzman, No. 1:10-cv-01145.

In summary, Kaplan was not willfully noncompliant with FACTA, because Kaplan's interpretation of Section 1681c--interpreting the Section as applying only to paper receipts--is not objectively unreasonable.  See Safeco, 551 U.S. at 68-71.  Kaplan's interpretation is consistent with the statute's plain language and consistent with the statutory language read in context.  In addition, there is legislative history supporting Kaplan's interpretation, and the majority of federal district courts, as well as the Seventh Circuit Court of Appeals, have concluded that Kaplan's interpretation is correct.  Moreover, Kaplan, like the defendant in Safeco, did not have guidance from the courts of appeals nor from the FTC that might have discouraged it from interpreting the statute as it did.  Id. at 70.

### III. CONCLUSION

For the foregoing reasons, Simonoff has failed to state a claim for violation of Section 1681c(g), and

Kaplan's motion to dismiss Simonoff's complaint is GRANTED.

Simonoff's Motion for Class Certification is DENIED as moot.

SO ORDERED.

Dated: November 29, 2010

Lawrence M. McKenna
U.S.D.J.